IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JORGE DAVILA, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Civil No. 2018-9<br>) |
| VIRGIN ISLANDS TAXI<br>ASSOCIATION, *et al.,* | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' "Motion to Approve Settlement and to Voluntarily Dismiss" [ECF 78].[1] Defendants did not file a response.

I.      BACKGROUND

Plaintiffs, citizens of Florida, are six adults (Jorge Davila, Martha Davila, Javier Davila, Dunia Davila, Miguel Suarez, Melinda Rosario) and four minors (Diana Davila, Javier Davila, Jr., Michael Suarez, Yamilis Suarez); the adults are the parents and natural guardians of the minors. Rev. First Amend. Compl. ("RFAC") [ECF 30] ¶¶ 1-10. Defendants are the Virgin Islands Taxi Association, Inc. ("VI Taxi") and Anthony Renal, one of its drivers. *Id.* ¶¶ 11-12. VI Taxi is a corporation organized under the laws of the U.S. Virgin Islands with its principal place of business in St. Thomas, U.S. Virgin Islands. *Id.* ¶ 11. Renal is a resident of St. Thomas and citizen of the U.S. Virgin Islands. *Id.* ¶ 12. Plaintiffs, cruise ship passengers who were visiting St. Thomas, hired Renal and his taxi van to tour the island on February 16, 2016. *Id.* ¶¶ 19, 23. This case arises out of an automobile accident that occurred on St. Thomas that day, while plaintiffs were riding in Renal's vehicle. *Id.* ¶¶ 24-28.

---

[1] Pursuant to the parties' consent, on July 9, 2019, the case was referred to the undersigned for all purposes. [ECF 84].

In their complaint, plaintiffs alleged (1) one count of negligent supervision, operation, and maintenance as to VI Taxi; (2) ten counts of negligence as to both defendants; and (3) one count of vicarious liability as to VI Taxi. RFAC [ECF 30] ¶¶ 40-153. Although plaintiffs sought damages in their complaint, they did not specify a dollar amount. *See id.* at p. 30. On March 13, 2019, the parties informed the Court that the case had settled. [ECF 76]. Plaintiffs filed the instant motion on June 27, 2019, under Federal Rules of Civil Procedure 17(c)(2) and 41(a)(1)(A)(ii). [ECF 78] at 1.

## II. LEGAL STANDARDS

A. <u>Federal Rules of Civil Procedure</u>

Rule 17(c)(2) provides:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

"Generally, when a parent brings a lawsuit on behalf of her minor child and has similar interests as the minor, there is no need for a court to appoint a guardian ad litem." *A.P. v. United States*, 736 F. App'x 309, 314 (3d Cir. 2018) (quoted in *Halloway v. SPM Resorts, Inc.*, 2019 WL 177927, at *2 (D.V.I. Jan. 11, 2019)). "[W]here there is a conflict of interest, the court is empowered to appoint a guardian ad litem to represent the minor." *A.P.*, 736 F. App'x at 314. Whether to appoint such a guardian is left to the court's discretion. *Id.* at 312-14.

Above all, "[d]istrict courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine

whether the settlement serves the best interest of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). Those interests are served if each minor plaintiff's net recovery is "fair and reasonable in light of their claims and average recovery in similar cases." *Robidoux*, 638 F.3d at 1179.

Rule 41(a)(1)(A)(ii) states that "the plaintiff may voluntarily dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."

B.  <u>Virgin Islands Choice of Law Principles</u>

The Court has subject-matter jurisdiction over this personal injury case under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.00. *See* RFAC [ECF 30] ¶ 13. Therefore, the Court must apply the substantive law of the Virgin Islands. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

Plaintiffs appear to argue, however, that the Court should apply Florida law when considering whether to approve the proposed settlement and whether to appoint guardians for the minors in connection with such settlement. [ECF 78] at 2.[2] Specifically, they contend that, under Florida Statute 744.387, the Court need not appoint legal guardians to represent the minors in connection with settlement of this case because none of them is due to receive more than $15,000. *Id.* There is no corresponding statute in the Virgin Islands. Thus, the first issue that arises is which jurisdiction's law to apply. In order to resolve this question, the Court must apply Virgin Islands choice of law principles. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

The Virgin Islands Supreme Court has not, since its decision in *Banks v. International Rental and Leasing Corporation*, 55 V.I. 967 (2011), articulated which choice of law principles

---

[2] Although plaintiffs do not expressly state that the Court should apply Florida law, that is implied by their reference to a Florida statute.

apply in the Virgin Islands. Recently, however, in *Clarke v. Marriott International, Inc.*, 2019 WL 3859751 (D.V.I. Aug. 16, 2019), the district court undertook a so-called *Banks* analysis to determine which choice of law principles to apply. The court therefore considered "(1) whether any [local or federal] courts [in the Virgin Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id.* at *6 n.4 (quotation marks omitted) (alteration in original).

First, the court identified the four choice of law approaches that have been taken by courts when reviewing personal injury actions: (1) *lex loci delicti* – applying the law of the place where the injury occurred, (2) Restatement (Second) of Conflicts of Law ("Second Restatement") – applying *lex loci delicti* unless some other state has a more significant relationship to the incident and parties, (3) government interest analysis – applying the law of the state that would have its policies advanced by the application of its law, and (4) applying a hybrid approach that combines the second and third approaches. *Clarke*, 2019 WL 3859751, at *7. Next, the court noted that prior to the *Banks* decision, a local statute provided "[t]hat rules of common law, as expressed in the restatements of the law approved by the American Law institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." *Id.* at *6 n.4 (citing 1 V.I.C. § 4). Ultimately, the court concluded that it did not need to decide which approach represented the soundest rule for the Virgin Islands because the two approaches recommended by the parties resulted in the same outcome. *Id.* at *7.

Here, because Virgin Islands courts have previously applied the restatements of the law and because a majority of courts have adopted the Second Restatement approach,[3] the Court finds

---

[3] *Clarke*, 2019 WL 3859751, at *7 (citing Symeon C. Symeonides, *Choice of Law in the American Courts*

that the Second Restatement provides the soundest rule for the Virgin Islands. Under the Second Restatement, there is a "presumption that the parties' rights are governed by the law of the state where an injury occurs 'unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.'" *Clarke*, 2019 WL 3859751, at *7 (quoting Second Restatement § 146 (1971)). Assessing the significance of the relationship between the state and the occurrence and the parties requires consideration of the contacts between them, as defined in the Second Restatement. *Id.* at *8. The contacts are described as follows: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quoting Second Restatement § 145 (1971)). Generally, "if both conduct and injury occur in a single jurisdiction, that jurisdiction's law will apply because the jurisdiction has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occur[] there." *Id.* (quotation marks omitted). Lastly, the court reviews the significance of the contacts in light of certain cornerstone principles identified in the Second Restatement. *Id.* at *9. The principles include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Second Restatement § 6 (1971).

---

*in 2017: Thirty-First Annual Survey*, 66 AM. J. COMP. L. 1, 60 (2018)); *accord* Gary J. Simson, An Essay on Illusion and Reality in the Conflict of Laws, 70 MERCER L. REV. 819, 822 n.17 (2019) (noting that the Second Restatement remains "the most widely adopted approach").

C.     <u>Law Governing the Settlement of Claims Involving Minors</u>

    1.     <u>Florida Law</u>

Regarding the settlement of a claim involving a minor, Florida law generally provides that "the court may enter an order authorizing the settlement if satisfied that the settlement will be for the best interest of the ward." F.S. § 744.387(1). In addition, the statute addresses when the court must appoint a legal guardian to represent the minor: "[T]he natural guardians or guardian of a minor may settle any claim by or on behalf of a minor that does not exceed $15,000 without bond. A legal guardianship shall be required when the amount of the net settlement to the ward exceeds $15,000." F.S. § 744.387(2).

    2.     <u>Virgin Islands Law</u>

In the Virgin Islands, "[a] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 694-95 (V.I. 2010) (quoting *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010)) (quotation marks omitted). When evaluating a proposed settlement, the court must consider three factors. *Rojas*, 53 V.I. at 695 (citing 53 Am. Jur. Trials 1, § 313). First, the court must determine whether the proposed settlement of the minor's claims is proportional to his injuries. *Id.* Second, the court must consider the defendant's funds. *Id.* If, for example, the proposed settlement is at the limits of the tortfeasor's insurance policy but less than the value of the minor's claim, the court must assess whether there is a reasonable explanation for the discrepancy. *Id.* Third, in cases where there are multiple claimants, the court must consider whether the minor's portion of the proposed settlement is "fair and representative." *Id.* Lastly, "[a]t any stage of a proceeding, the Court may

appoint a guardian ad litem if the Court determines that representation of the interest otherwise would be inadequate." 15 V.I.C. § 5-115.

### III. DISCUSSION

A. <u>Plaintiffs' Position</u>

First, plaintiffs note that "there was a very limited amount of liability insurance available to pay the plaintiffs['] claims," in that VI Taxi's insurance provider completely denied coverage and Renal only carried a $50,000 insurance policy. [ECF 78] at 2. Second, plaintiffs contend that "the most equitable way of dividing the settlement proceeds is to use each plaintiff's medical expenses as the benchmark for determining the percentage of their share of the settlement fund." *Id.* at 3. Thus, plaintiffs took each plaintiff's medical expenses and divided it by the total dollar amount incurred by all plaintiffs. [ECF 88] at 2.[4] Plaintiffs then used the resulting percentage to calculate what percentage of the settlement fund each plaintiff would receive. *Id.* Plaintiffs aver that all plaintiffs, including the minor children, agree that this is the fairest way to distribute the available funds. [ECF 78] at 2. Lastly, plaintiffs argue that under Florida law, the court need not appoint a legal guardian for the minor plaintiffs because each will receive less than $15,000 under the terms of their proposal. *Id.* at 2 (citing F.S. § 744.387(1)).

B. <u>Analysis</u>

1. <u>Virgin Islands Law Applies</u>

First, the Court notes that because the accident occurred on St. Thomas, under the Second Restatement, there is a presumption that Virgin Islands law applies unless Florida law has a more

---

[4] The two sealed exhibits filed on the docket at [ECF 88] are exhibits 6 and 7 to plaintiffs' motion to approve the settlement. Exhibit 6 lists each defendant, his total medical specials and what percentage of the total medical specials each defendant incurred. Exhibit 7 summaries plaintiff's settlement distribution proposal, listing the gross settlement amount, deductions for attorney's fees and expenses, and each plaintiff's share of the settlement (by percentage and dollar amount).

significant relationship to the incident and the parties. Here, the law of the Virgin Islands has a more significant relationship because (1) the injury occurred on St. Thomas, (2) the accident that caused the injury occurred on St. Thomas, and (3) the relationship between the parties is centered on St. Thomas, because that is where plaintiffs' cruise ship docked and where plaintiffs boarded a VI Taxi vehicle driven by Renal. Thus, the Virgin Islands has an interest in regulating the conduct of visitors to the territory and providing redress if they are injured on St. Thomas. In any event, Florida's interest in protecting its minors through application of F.S. § 744.387 is not implicated in the instant case because each of the four minors are due less than $15,000 under the terms of the proposed settlement.

    2.    <u>The Proposed Settlement is Appropriate Under Virgin Islands Law</u>

The Court concludes, based on its independent investigation and evaluation, that the settlement proposed in the instant case is appropriate under Virgin Islands law because it protects the interests of the minor plaintiffs. The Court's decision is informed by two cases from the local courts.

In *Rojas*, plaintiffs' counsel appealed two orders issued by the Superior Court of the Virgin Islands modifying his attorney's fees and costs in a personal injury case that settled. 53 V.I. at 687-89. The underlying case was brought by two adults and five minors, following an automobile accident. *Id.* at 687. Plaintiffs sued the driver of the truck that collided with their car, as well as the driver's employer. *Id.* The Supreme Court of the Virgin Islands vacated the Superior Court's decision. *Id.* at 695-96. Significantly, the appellate court reviewed the trial court's evaluation of the proposed settlement agreement. *Id.* at 696. The appellate court concluded, *inter alia*, that the trial court failed to discuss whether (1) the proposed monetary allocation to each minor plaintiff was justified given his injuries; (2) the total value of the settlement (minus attorney's fees and

expenses) was adequate given the extent of the minor plaintiffs' injuries and the funds available to the tortfeasor; and (3) the proposed distribution of settlement proceeds was "fair, representative, or furthered the best interests of the minors," taking into account counsel's fees and expenses. *Id.*

In *Rogers v. Kodran*, a woman and her infant daughter were injured in an automobile accident. 2012 WL 12871439, at *1 (V.I. Super. Feb. 1, 2012). They sued the driver of the vehicle and also the company he worked for. *Id.* Following successful mediation, the parties submitted their proposed settlement plan to the court. *Id.* The plan provided that the minor would receive $5,000 but did not address the claims of the adult plaintiff. *Id.* The Superior Court of the Virgin Islands ultimately denied the parties' petition for approval of settlement. *Id.* at *2-3.

First, the court concluded that the sum of $5,000 was appropriate even though the minor's medical records failed to address whether her injuries were fully resolved or were ongoing. The court so concluded based on its assessment of (1) the infant's injuries, (2) the length of her treatment, (3) her age at the time of the accident, and (4) her subsequent improvement following treatment. *Id.* at *2. Next, the court noted that because neither plaintiffs nor defendants provided the court with any information regarding the extent of defendants' funds, the court was unable to compare the offered amount with defendants' insurance limits. *Id.* In addition, the court noted that neither side addressed whether the proposed settlement took into account defendants' allegations of contributory negligence. *Id.* Finally, the court held that it could not assess the fairness of the proposed settlement vis à vis the minor's claims because the parties failed to provide the court with any information about the adult's claims. *Id.* at *3.

Here, the Court can, based on the record before it, assess the fairness of the proposed settlement to the four minor plaintiffs. First, although the settlement fund does not, after attorney's fees and expenses are deducted, permit each plaintiff to be fully compensated for his medical

expenses, the proposed distribution is proportionate. In other words, if Plaintiff A incurs $1,000 in medical expenses and the total amount of plaintiffs' medical bills is $10,000, then Plaintiff A would receive $1,000 or 10% of the total settlement fund. Further, although plaintiffs do not provide the Court with any medical reports or bills, they state that "[a]ll [plaintiffs] have reached maximum medical improvement and [that] none of the minors are still under doctors care for injuries received in this accident." [ECF 78] at 3. While some of the adults appear to have concluded treatment, others may require further treatment for their injuries.[5] In addition, plaintiffs describe the treatment each plaintiff received and provide a total for each plaintiff's medical expenses.[6] Thus, the Court finds that under the proposed plan, each minor will receive compensation that is proportional to the injuries he sustained. *Cf. King v. Kmart Corp.*, 2011 WL 13118817, at *2 (V.I. Super. Aug. 24, 2011) (withholding approval of proposed settlement because, *inter alia*, the parties did not provide sufficient "documentation showing the nature and extent of the minor's injuries").

Second, although the proposed settlement does not fully cover each plaintiff's medical expenses, plaintiffs provided a reasonable explanation. Plaintiffs explain that they will not be fully compensated for their injuries because VI Taxi's insurer excluded motor vehicle accidents from its policy, and because Renal only carried a $50,000 liability policy. *See* [ECFs 78-3, 78-4]. Third, the court finds that the minor plaintiffs' portion of the settlement funds is fair because no

---

[5] *See, e.g.*, [ECF 78] at 7 ("On August 28, 2017, Dr. Gutierrez issued a final narrative report and based upon the American Medical Association Guide to Permanent Impairment, issued Mrs. Rosario a 12% whole person impairment rating. Mrs. Rosario has incurred medical expenses of $9,245.38, and may require further treatment and possibly surgery."

[6] *See, e.g.,* [ECF 78] at 3 ("Javier Davila Jr. is 17 years old and will turn 18 in October 2019. Javier declined treatment at the scene. He was later taken to see Humberto Gutierrez, D.C, by his parents, and was diagnosed with neck and back pain from the accident. Dr. Gutierrez recommended a course of treatment which included moist heat therapy, cryotherapy, EMS, massage therapy, spinal manipulation, intersegmental traction, neuromuscular reeducation, corrective spinal exercises, resistive exercises and physical therapy exercises. Javier did not, however, follow through for the full course of those treatments. His total medical expenses amount to $4,515.80.").

distinction is made between any of the plaintiffs based on age. In other words, the proposed settlement distributes fund proportionally based on each plaintiff's medical bills, regardless of whether the individual is an adult or a minor.

Finally, the Court concludes that there is no need, under Virgin Islands law, to appoint a guardian ad litem to represent the minor plaintiffs in this case. As explained above, because plaintiffs' proposed distribution plan treats all plaintiffs equally, the Court does not fear that the minors' interests are not being adequately represented or considered.

## IV. CONCLUSION

The premises considered, it is hereby ORDERED as follows:

(1) Plaintiffs' motion is GRANTED.

(2) The settlement as outlined in [ECFs 78, 88] is hereby APPROVED and the settlement proceeds shall be distributed as provided therein.

(3) The parties' Stipulation of Dismissal [ECF 78-1] is ACCEPTED and this matter is DISMISSED.

(4) The Clerk of Court shall mark this matter as CLOSED.

**Dated:** October 17, 2019            S\_____
                                                                       **RUTH MILLER**
                                                                       United States Magistrate Judge